IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

FTN FINANCIAL CAPITAL MARKETS,
a division of First Tennessee Bank,
National Association,

    Plaintiff/Counter-Defendant,

vs.                                                   4:03-CV-249-SPM

MAGNOLIA CAPITAL ADVISORS,
INC.,

    Defendant/Counter-Plaintiff,
_____/

## ORDER ENFORCING SETTLEMENT AGREEMENT

**THIS CAUSE** comes before the Court upon the "Defendants' Motion to Enforce Settlement Agreement" (doc. 173) filed February 9, 2005; the memorandum in support thereof (doc. 179); and Plaintiff's memorandum in opposition (doc. 181). For the reasons set forth below, the Court finds the motion must be granted.

## FACTS

In order to understand the framework of the issue presented, a chronology of events leading up to the filing of the motion must be laid out. Briefly, Plaintiff and Defendants agreed to a settlement with certain details to be finalized.

Plaintiff sent Defendants a proposed settlement and release agreement with an introductory paragraph binding only the named parties in the suit, *viz.*, FTN Financial Capital Markets (Plaintiff), Magnolia Capital Advisors, Inc. (Defendant), and Don and Sarah Reinhard (Defendants).  Defense counsel responded to the proposal, making minor language adjustments and advising Plaintiff's counsel that she would attempt to have that agreement executed within three days, as specifically requested by Plaintiff.

Plaintiff later sent a new version of the agreement which included various Magnolia-related companies[1] not present in the first agreement.  Defense counsel strenuously objected to this addition, arguing that she was not authorized to settle on behalf of other parties.  Plaintiff apparently refused to honor the agreement without this inclusion, leading Defendants to file this motion to enforce the settlement agreement.

A general chronology is set out below.

**January 25, 2005:** Defense counsel Kelly O'Keefe e-mails Plaintiff with her understanding of the terms of settlement; in particular, "MCAI and FTN will enter a mutual release with terms to be agreed on."  O'Keefe states, "We can accept the terms of the agreement outlined below provided that we can agree on the terms of the release."

**January 25, 2005:** Plaintiff responds with: "We have a deal in principal [sic], with the terms and details to be reduced to writing. [A]s we have discussed, the release will include related companies and individuals on both sides."  Plaintiff goes on to say that a notice of settlement will be drafted and filed with the Court.

**January 27, 2005:** Plaintiff e-mails a proposed written "Mutual Release and

---

[1] The term "Magnolia entities" includes Magnolia Capital Management, Inc.; Magnolia Capital Management, LP; Magnolia Capital Partners, LP, f/k/a Magnolia Mortgage Partners, LP; and Magnolia Capital Advisors.

Settlement Agreement" to all parties.  The introductory paragraph reads as follows:

> This Mutual Release and Settlement Agreement ("Agreement") is knowingly, willingly, and voluntarily entered into this ____ day of _____, 2005, by and between FTN Financial Capital Markets ("FTN"), Magnolia Capital Advisors, Inc. ("Magnolia"), Don Reinhard ("Mr. Reinhard") and Sarah Reinhard ("Mrs. Reinhard") in order to conclude, terminate, and settle any and all disputes between them.

**January 27, 2005:** Plaintiff e-mails the proposed Notice of Settlement to all parties.

**January 28, 2005:** O'Keefe agrees to the Notice of Settlement**.**

**January 28, 2005:** After reviewing the proposed settlement agreement sent by Plaintiff the day before, O'Keefe responds with: "Per our discussion I will attempt to coordinate execution of the agreement by Monday as you requested . . . . I cannot guarantee that it will be finalized by Monday.  I will do what I can."

**January 31, 2005:** Plaintiff's counsel e-mails O'Keefe indicating that Plaintiff wants to add Magnolia entities to the agreement: "Also, I needed to confirm with you that all the Magnolia entities are bound by and benefit from the agreement.  I suggest that we add a section including those entities in the definition of Magnolia as well as include them on the signature line with Capital Advisors, since Don [Reinhard] will presumably be signing on behalf of all of them. Thanks."

**January 31, 2005:** Plaintiff e-mails O'Keefe a new version of the agreement including the Magnolia entities.

**February 1, 2005:** O'Keefe reviews the new version and specifically objects to the addition of the entities: "Magnolia Capital Partners, LP is not a party to this case so I don't like the fact that you are now including them in the agreement."

**February 2, 2005:** Plaintiff files a Notice of Settlement (doc. 171) stating that the parties have reached a tentative settlement subject to agreement on specific terms.

**February 3, 2005:** O'Keefe renews her objection: "Magnolia Mortgage Partners is not a party to the suit and I cannot settle on behalf of it.  The deal we agreed to did not include Magnolia Mortgage Partners.  In fact, Magnolia Mortgage was not on the original settlement agreement you sent to me.  This is a new term that you

added after I agreed to the terms of the Notice of Settlement. I am prepared to move forward with the settlement agreement that we initially discussed and I will send you a signed copy of that agreement with my handwritten changes."

**February 4, 2005:** O'Keefe faxes a copy of the original agreement with defendant Don Reinhard's signature to Plaintiff.

**February 9, 2005:** The instant motion to enforce settlement agreement is filed.

## ANALYSIS

The determination as to whether a binding settlement agreement was reached by the parties is governed by Florida contract law principles. U.S. Fire Ins. v. Caulkins Indiantown Citrus Corp., 931 F.2d 744, 749 (11th Cir. 1991). The standard of proof required to enforce a settlement agreement, provided one is found to exist, is merely a preponderance of the evidence. *E.g.*, South Beach Sun Care, Inc. v. Sea & Ski Corp., 1999 WL 350458, at *11 (S.D. Fla. 1999).

Under Florida law, an objective test is employed to assess whether a contract, or settlement, may be duly enforced. Robbie v. City of Miami, 469 So. 2d 1384, 1385 (Fla. 1985). This test considers not whether there was an "agreement of two minds in one intention, but on the agreement of two sets of external signs – not on the parties having meant the same thing but on their having said the same thing." Id. (*quoting* Gendzier v. Bielecki, 97 So. 2d 604, 608 (Fla. 1957) (citation omitted)). Courts have held that a settlement, even one that is reached orally, "will be enforced as long as there is clearly an offer and acceptance of the compromise and a meeting of the minds as to terms of the agreement." Wilson v. Wilson, 46 F.3d 660, 666 (7th Cir. 1995) (citations

omitted).

There was unequivocally an offer and acceptance present here. Plaintiff's sending the proposed settlement agreement on January 27th constituted an offer. Defendant accepted that offer with the e-mail stating counsel's intention to have that agreement executed by Monday (again, at Plaintiff's request). This correspondence clearly communicated to Plaintiff Defendant's willingness to be bound by that particular agreement and manifests the intention of both parties to execute that version of the agreement. In addition, O'Keefe assented to the notice of settlement being filed with the Court based on her understanding that the agreement sent to her by Plaintiff just the day before was the version of the agreement that would be utilized by the parties.

Plaintiff's later addition of the Magnolia entities was quickly and categorically rejected by Defendant through O'Keefe, who explicitly stated, "The deal we agreed to did not include Magnolia Mortgage Partners. In fact, Magnolia Mortgage was not on the original settlement agreement you sent to me." She went on to say, "This is a new term that you added after I agreed to the terms of the Notice of Settlement," and added, "I am prepared to move forward with the settlement agreement that we initially discussed and I will send you a signed copy of that agreement with my handwritten changes."

Plaintiff's characterization of the agreement as tentative and non-binding is particularly puzzling in light of the fact that it was Plaintiff who drafted and sent the original agreement naming only the parties to the suit; drafted a proposed

Notice of Settlement based on that agreement; and then set a three-day deadline for Defendants to execute and return the agreement. This conduct, inconsistent with a refusal of the terms, raises a presumption of assent on which the other party may rely. Wong v. Bailey, 752 F.2d 619, 621 (11th Cir. 1985).

Defendant, having been asked to expedite the execution of the agreed-upon document, and having agreed to a notice of settlement based on that document, is certainly entitled to rely upon that document as a binding agreement. Plaintiff's apparent unhappiness with its resultant strategic position does not negate the validity of the settlement. It is therefore

**ORDERED AND ADJUDGED** as follows:

1. The motion to enforce settlement agreement (doc. 173) is hereby *granted*.

2. The motion to vacate scheduling order (doc. 191) is *denied* as moot.[2]

3. The parties are directed to abide by the terms of the "Mutual Release and Settlement Agreement" as that agreement was presented to Defendants on January 27, 2005.

**DONE AND ORDERED** this fourth day of May, 2005.

                    *s/ Stephan P. Mickle*
                    Stephan P. Mickle
                    United States District Judge

/pao

---

[2] The parties agree that granting the motion to enforce settlement agreement would eliminate the need for a revised scheduling order. *See* doc. 197.